# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| DAVID HOWARD LANG,<br><br>    Petitioner,<br><br>vs.<br><br>JOHN AULT, Warden,<br><br>    Respondent. | No. C04-4101-MWB<br><br>**REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS** |

      This matter is before the court on a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, filed by the petitioner David Howard Lang on November 1, 2004. Doc. No. 1-2. Lang is an inmate at the Anamosa State Penitentiary in Anamosa, Iowa.

      On August 13, 1999, Lang pled guilty in the Iowa District Court for Woodbury County to a charge of possessing more than five grams of methamphetamine with intent to deliver, as a second offense, in violation of Iowa Code sections 124.401(1)(b)(7) and 124.411. *See* Doc. No. 28-4 at 35, *State v. Lang*, 2001 WL 99289 at *1 (Iowa Ct. App. at 2001). The Iowa Court of Appeals described the circumstances underlying Lang's guilty plea as follows:

> Defendant originally was charged with violation of Iowa Code 124.401(b)(7) and with possession of more than seven grams of a controlled substance without a tax stamp attached in violation of Iowa Code sections 453B.1 and 453B.12. As a part of the plea bargain the tax stamp charge was dropped but the possession charge was elevated to a second offense. A cooperation agreement that was a part of the plea agreement provided that defendant would cooperate with law enforcement agencies, and with the United States attorneys and Woodbury county attorneys. He was to be in daily contact with law enforcement and be available for interviews and debriefing

> with any of the authorities on their request. The question of whether defendant complied with the agreement was to be determined by the prosecuting attorney.

Doc. No. 28-4 at 35. The prosecuting attorney determined that Lang had failed to satisfy the terms of the plea agreement, and Lang was sentenced to fifty years in prison. *See id.* at 36.

Lang filed a direct appeal, an application for post-conviction relief, and an appeal of the denial of post-conviction relief. He then filed a petition for writ of *habeas corpus* in this court, asserting ten grounds for relief. The respondent John Ault filed a motion for partial summary judgment, arguing many of Lang's claims were unexhausted and procedurally defaulted. The undersigned recommended the motion be granted when Lang failed to file a resistance. Lang thereafter filed *pro se* objections to the report and recommendation, and on May 16, 2005, Chief Judge Mark W. Bennett issued an order adopting the undersigned's recommendation, and granting Ault's motion for partial summary judgment. In the order, Chief Judge Bennett held that only two of Lang's claims are properly before this court for review: "Lang's claim that the state district court abused its discretion when it held that Lang violated the cooperation agreement he had with the State of Iowa[,] and his claim that his counsel was ineffective when he failed to object to the state's breach of the cooperation agreement." Doc. No. 21 at 9.

Lang filed a brief in support of his petition on September 29, 2005 (Doc. No. 27). Ault filed a responsive brief (Doc. No. 28-1), a copy of the plea agreement in question (Doc. No. 28-2), and an appendix of the relevant state-court decisions (Doc. Nos. 27-3 & 27-4). The court finds Lang's petition is fully submitted, and turns to consideration of the two issues preserved for review.

## FACTUAL BACKGROUND

The following facts are taken from Lang's petition in this case (Doc. No. 1-2), the Iowa Court of Appeals decision on Lang's direct appeal (Doc. No. 28-4 at 35-37), the PCR court's ruling on the State's motion for summary judgment (Doc. No. 28-4 at 38-59), and the transcript from Lang's sentencing hearing on December 2, 1999 (Doc. No. 28-4 at 5-31).

On July 29, 1999, Lang was involved in a controlled sale of methamphetamine to a confidential informant. Lang was arrested, and on July 30, 1999, he was charged in Woodbury County with possession of more than five grams of methamphetamine with intent to deliver, a class B felony, and a drug tax stamp violation, a class D felony. Lang pled not guilty to the charges on August 6, 1999. Attorney Peter Van Etten was appointed to represent Lang. At Lang's direction, Mr. Van Etten pursued a plea agreement with the State.

On August 13, 1999, Lang entered into a written plea agreement (Doc. No. 28-2) with the State. Among other things, the plea agreement provided for an amendment of the drug count against Lang to possession of more than five grams of methamphetamine with intent to deliver, as a second offense, in violation of Iowa Code sections 124.401(1)(b)(7) and 124.411. The "second offense" language was added when it became clear from Lang's criminal history that he had a prior conviction in Nebraska for drug-related crimes. In the plea agreement, Lang agreed to plead guilty to the drug charge and the State agreed to dismiss the drug tax stamp charge. The State also agreed to recommend a sentence of incarceration not to exceed twenty-five years, with a mandatory minimum sentence of two and seven-ninths years, and a fine of $5,000, plus a 30% surcharge and a $5.00 D.A.R.E. surcharge. In addition, Lang's driver's license would be revoked for 180 days. *See* Doc. No. 28-2.

In return for these considerations, Lang agreed to cooperate with law enforcement in the investigation of "the use, possession, and trafficking of controlled substances and related criminal activity within the Northern District of Iowa and elsewhere." *Id.* at ¶ 4. The plea agreement spelled out the nature of Lang's cooperation with law enforcement, which included, in part, the following:

> Full and complete cooperation with the United States Attorney's Office, Woodbury County Attorney's Office, Sioux City Police Department and any other law enforcement agencies includes but is not limited to the following:
>
> A. maintaining daily contact with the law enforcement officer the defendant is designated to work with during this agreement;
> B. providing intelligence information;
> C. arranging for the purchases of narcotics and introductions to narcotics traffickers by the defendant and/or undercover agents. At a minimum, this includes introductions to undercover agents by this defendant and purchases of controlled substances by this defendant from individuals over a two month active period and continuing as long as testimony is needed for cases developed in that time;
> D. providing information to secure search warrants;
> E. providing testimony before a United States District Court, [or] Iowa District Court as a witness in any prosecutions growing out of this investigation;
> F. providing any document[s] in the defendant's possession, custody or control that are relevant to this investigation;
> G. being available for interview and debriefing sessions by government attorney and law enforcement agents upon request;
> H. recording narcotic related conversations as requested.
>
> 5. The defendant will provide complete and truthful information to the attorneys and law enforcement officers of the government, and the federal grand jury conducting this investigation. The defendant will answer all questions concerning this investigation and will not withhold any

information. The defendant will neither attempt to protect any person or entity through false information or omission, nor falsely implicate any person or entity. Since the United States and State of Iowa insist upon the defendant telling the truth and nothing but the truth during this investigation and in the event the defendant should be called as a witness, the defendant's failure to provide truthful information will render this agreement void. Further, the defendant will at all times tell the truth and nothing but the truth whether it be during investigation or as a witness at any trial or court proceedings, regardless of who asks the questions – the prosecutors, defense attorneys, investigating agents, probation officers, or the judge.

Doc. No. 28-2, ¶¶ 4 & 5.

The plea agreement further provided sole discretion to the prosecuting attorney to determine whether Lang had completed the terms of the plea agreement satisfactorily, listing the following factors for consideration in making the determination:

(A) The government's evaluation of the significance and usefulness of any assistance rendered by the defendant.
(B) The truthfulness, completeness, and reliability of any information or testimony provided by the defendant.
(C) The nature and extent of the defendant's assistance.
(D) Any injuries suffered or any danger or risk of injury to the defendant or the defendant's family resulting from any assistance provided by the defendant.
(E) The timeliness of any assistance provided by the defendant.

*Id.*, ¶ 10.

On August 13, 1999, the State filed a motion to amend the drug charge to a second offense. Lang pled guilty to the charge, as amended, and the State court judge found Lang guilty pursuant to his plea. The PCR court found the trial judge had made "a detailed inquiry into the intelligence and voluntariness of [Lang's] plea" before accepting the guilty plea. Doc. No. 28-4 at 40. During his plea hearing, Lang stipulated to a 1992 drug conviction in Nebraska.

Following his plea, Lang was released on a signed, unsecured appearance bond in the amount of $32,500. His sentencing was scheduled for October 22, 1999, at 9:00 a.m.

5

On September 21, 1999, the State filed an application to reconsider the conditions of Lang's release, alleging Lang had not complied with the terms of the cooperation agreement. A hearing on the application was scheduled for October 1, 1999, at 3:00 p.m. Lang failed to appear at the hearing, and a warrant was issued for his arrest. Lang further failed to appear for his sentencing hearing on October 22, 1999, and a second warrant was issued for his arrest. Lang was arrested on the outstanding warrants on November 4, 1999.

On November 8, 1999, the State court re-appointed attorney Peter Van Etten to represent Lang in connection with his sentencing. On November 10, 1999, the State court entered an order scheduling Lang's sentencing for December 2, 1999. On November 19, 1999, Lang requested a copy of his file from Mr. Van Etten. Lang prepared and filed a series of *pro se* motions and letters in which he asked for a new attorney, to withdraw his guilty plea, to suppress evidence, and to appoint an investigator. In his motion for new counsel, Lang alleged his attorney had not represented Lang's best interests. He further alleged his attorney had a conflict of interest because Mr. Van Etten had represented Lang's son a few years earlier in connection with a probation revocation case. During the December 2, 1999, sentencing hearing, the State court took up Lang's motion for a new attorney, and denied the motion. The State court considered Lang's motion to withdraw his guilty plea as a Motion in Arrest of Judgment, and denied that motion, as well.

During the sentencing hearing, Lang, for the first time, contested the amount of methamphetamine found on his person, and he argued he had complied with the terms of the plea agreement. The Iowa Court of Appeals summarized the proceedings as follows:

> On December 2, 1999, the State dismissed the drug tax stamp violation advancing it was done pursuant to the plea agreement. At the December 2, 1999 hearing[,] defendant testified in support of his motion [for new counsel and to withdraw his guilty plea]. He claimed his name had been in the paper three times and nobody wanted to work with him.

6

> Defendant further testified he told agents that he had some information that a thousand pounds of methamphetamine was coming from California to Omaha, from Omaha to Sioux City, and from Sioux City to Sioux Falls. He said he was willing to give up the people involved in that or those transactions. He said he was only told his plea agreement would be withdrawn and he would go back to jail.
>
> The prosecutor told the court that defendant told the officers he couldn't do anything. He further said that defendant failed to provide any details about the alleged methamphetamine coming in so that it could be found. The prosecutor further said he had consulted with the drug task force and found that defendant had failed to satisfy the terms of the plea agreement.

Doc. No. 28-4, pp. 35-36.

Lang argued he had put forth a good-faith effort to cooperate with law enforcement, but his cooperation was impeded for various reasons. He stated he had been unable to give authorities more information about the 1,000-pound shipment of methamphetamine from California because his source refused contact. In addition, Lang claimed he had heard there was a contract out on his life.

The trial court found Lang had breached the plea agreement. Based on the prosecutor's determination that Lang had breached the plea agreement, the prosecutor recommended a seventy-five year term of imprisonment. The trial judge sentenced Lang to an indeterminate term of imprisonment not to exceed fifty years, plus certain fines.

After exhausting his appellate remedies on the two issues as set forth above, Lang is before this court arguing the State court abused its discretion in finding he had breached the plea agreement, and his trial counsel was ineffective in failing to object to the State's sentencing recommendation, which he argues breached the plea agreement.

## STANDARD OF REVIEW

To prevail in a habeas action, the petitioner must show the decision of the state court on the issue raised "was either (1) 'contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000) (quoting 28 U.S.C. § 2254(d)(1)).

Under the first category, a state-court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.*, 529 U.S. at 405, 120 S. Ct. at 1519. The Court explained:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.

*Id.*, 529 U.S. at 412-13, 120 S. Ct. at 1523. Further, "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Court's] decisions as of the time of the relevant state-court decision." *Id.*, 529 U.S. at 412, 120 S. Ct. at 1523.

The second category, involving an "unreasonable application" of Supreme Court clearly-established precedent, can arise in one of two ways. As the Court explained:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or

8

> unreasonably refuses to extend that principle to a new context where it should apply.

*Id.*, 529 U.S. at 407, 120 S. Ct. at 1520 (citing *Green v. French*, 143 F.3d 865, 869-70 (4th Cir. 1998)).  Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established federal law.'"  *Id*, 529 U.S. at 407-08, 120 S. Ct. at 1520.  Notably,

> Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

*Id.*, 529 U.S. at 411, 1250 S. Ct. at 1522.

If the state court decision was not contrary to clearly established federal law, as determined by the Supreme Court of the United States, and if it did not involve an unreasonable application of that law, then the federal court must determine whether the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

Thus, to prevail here, Lang must show the Iowa courts either (1) reached a decision contrary to applicable Supreme Court precedents on a question of law; (2) correctly identified the applicable law, but then failed to apply the law reasonably to the facts of this case; or (3) made its decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

9

## DISCUSSION

### A. *Abuse of Discretion Claim*

Lang argues the trial court abused its discretion in finding he had breached the plea agreement. He argues the State offered no evidence at the sentencing hearing to establish that he had breached the agreement, and the only evidence was his own testimony that he had given a good-faith effort to comply with the terms of the agreement. Lang further argues the State had the burden of proving he had breached the agreement, and the State failed to do so. Doc. No. 27, pp. 3-4 (citing *United States v. Brown*, 801 F.2d 352, 355 (8th Cir. 1986); *United States v. Johnson*, 861 F.2d 510 (8th Cir. 1988)). The Iowa Court of Appeals observed, "The burden is on the State to show the defendant failed to live up to his end of the bargain." Doc. No. 28-4 at 36 (citing *State v. Barker*, 476 N.W.2d 624, 628 ((Iowa Ct. App. 1991)).

Ault argues Lang has failed to point to any specific factual determination made by the Iowa courts which Lang alleges was unreasonable. Ault further argues the Iowa Court of Appeals's determination of the facts "was reasonable in light of the evidence presented in the State court proceedings." Doc. No. 28-1 at 12. Ault disagrees with Lang's claim that no evidence was offered to show he breached the plea agreement, noting the Iowa Court of Appeals indicated "[t]he prosecutor testified he had checked with the drug task force and defendant had done little or nothing as provided for in the agreement." Doc. No. 28-4 at 36; Doc. No. 28-1 at 15. According to Ault, this statement in the appellate opinion indicates the Iowa Court of Appeals "treated the professional statements of the prosecutor as testimony." Doc. No. 28-1 at 15.

Ault further argues, without citation to any applicable Supreme Court case law, that the Iowa court's decision "was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent." Doc. No. 28-1 at 14 (citing 28 U.S.C. § 2254(d)(1)). Indeed, neither of the parties has cited any Supreme Court precedent to

10

support their arguments. The court, therefore, will discuss the applicable law before proceeding to consider the merits of Lang's first claim for relief.

Plea agreements are a well-recognized part of our criminal justice system. The Supreme Court has observed that plea agreements "are consistent with the requirements of voluntariness and intelligence – because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S. Ct. 2543, 2547, 81 L. Ed. 2d 437 (1984).

> For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious – his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated. For the State there are also advantages – the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof. It is this mutuality of advantage that perhaps explains the fact that at present [in 1984,] well over three-fourths of the criminal convictions in this country rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury.

*Brady v. United States*, 397 U.S. 742, 752, 90 S. Ct. 1463, 1471, 25 L. Ed. 2d 747 (1970) (footnote omitted).

As a criminal defendant, Lang's contractual relationship with the State is governed by the Constitution. A determination of Lang's "rights and responsibilities under the plea agreement is controlled by the principles of fundamental fairness imposed by the Due Process Clause." *Ricketts v. Adamson*, 483 U.S. 1, 20-21, 107 S. Ct. 2680, 2691, 97 L.

Ed. 2d 1 (1987) (Justices Brennan, Marshall, Blackmun, and Stevens, dissenting); *see Mabry*, 467 U.S. at 509, 104 S. Ct. at 2547 (defendant may challenge plea under Due Process Clause "when it develops that the defendant was not fairly apprised of [the] consequences [of the plea]"). In *Ricketts*, the four dissenting Justices noted the Court had not "address[ed] in any comprehensive way the rules of construction appropriate for disputes involving plea agreements." *Id*. 483 U.S. at 16, 107 S. Ct. at 2689. However, the dissent noted commercial contract law may be useful by analogy, at least in framing the terms of the debate. *Id*. The Eighth Circuit Court of Appeals similarly interprets plea agreements "according to general contract principles." *United States v. Gomez*, 271 F.3d 779, 781 (8th Cir. 2001) (citing *United States v. Thournout*, 100 F.3d 590, 594 (8th Cir. 1996).

Under general contract law in Iowa, the burden of proof, by a preponderance of the evidence, is on the party claiming a breach of the contract has occurred. *See Holliday v. Rain & Hail L.L.C.*, 690 N.W.2d 59, 64 (2004). Thus, as noted by the Iowa Court of Appeals, the burden was on the State to prove Lang breached the plea agreement. In affirming the trial court's holding that Lang had breached the agreement, the Iowa Court of Appeals noted:

> The record supports a finding the defendant did not comply with the plea agreement. He failed to appear for a scheduled bond review hearing or the originally scheduled sentencing hearing. He was only brought to court after he was arrested and incarcerated on the basis of a warrant issued when he failed to appear.
>
> The prosecutor testified he had checked with the drug task force and defendant had done little or nothing as provided for in the agreement. Rather, defendant told them he could do nothing. Defendant's testimony as to the events further supports the prosecutor's representations.

Doc. No. 28-4 at 36.

The trial court did not rely solely on the prosecutor's statement that Lang had failed to comply with the terms of the plea agreement. The trial court also had before it the court records indicating Lang had failed to appear for two scheduled hearings, and two warrants had been issued for his arrest. Even without the prosecutor's statements, the trial court properly held Lang breached the plea agreement when he failed to stay in daily contact with law enforcement. *See* Doc. No. 28-2 ¶ 4(A) (requiring Lang to "maintain[] daily contact with the law enforcement officer the defendant is designated to work with during this agreement").

Lang has failed to show the Iowa court's decision is contrary to any applicable Supreme Court precedent on the issue. He further has failed to show the Iowa court's decision was based on an unreasonable determination of the facts in light of the evidence. Consequently, Lang's claim that the trial court abused its discretion in finding he had breached the plea agreement should be denied.

### B. *Ineffective Assistance of Counsel Claim*

Lang's second claim is that his attorney was ineffective in failing to object to the State's breach of the plea agreement. Lang argues the State failed to prove he had breached the plea agreement, and then the State breached the agreement by recommending Lang's sentence be trebled, contrary to the terms of the plea agreement. *See* Doc. No. 28-2, ¶ 12 (providing for period of incarceration not exceeding 25 years; further providing "this sentence shall not be trebled, as would be permitted by Iowa Code section 124.411").

Ault asserts Lang's argument ignores paragraph 13 of the plea agreement, which provides as follows:

> If, in the sole discretion of the prosecuting attorney, it is determined that the defendant has failed to satisfactorily complete the above terms of this plea agreement, then there is

> no agreement between the parties as to the defendant's sentence for Count I and the State will not dismiss Count II of the Trial Information.[1] The defendant's sentence for count I may be trebled, pursuant to Iowa Code section 124.411. . . .

Doc. No. 28-2, ¶ 13. Ault argues once the prosecutor had determined Lang had breached the plea agreement, the prosecutor then could recommend the trebled sentence under the terms of the plea agreement.

For a petitioner to prevail on an ineffective assistance of counsel claim, he ordinarily must satisfy the two-pronged test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the U.S. Supreme Court held that to prevail on a claim for ineffective assistance of counsel:

> *First*, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second*, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984) (emphasis added).

The reviewing court must determine "whether counsel's assistance was reasonable considering all the circumstances." *Id.*, 466 U.S. at 688, 104 S. Ct. at 2065. The defendant's burden is considerable, because "a court must indulge a strong presumption

---

[1] There is a certain incongruity to the fact that the State did, in fact, dismiss Count II, the tax stamp charge, "advancing it was done pursuant to the plea agreement," while at the same time arguing Lang had breached the plea agreement. Doc. No. 28-4 at 35. However, the incongruity does not affect the undersigned's recommendation on the two issues currently before the court.

14

that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.*, 466 U.S. at 689, 104 S. Ct. at 2065 (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955)).

Furthermore, even if the defendant shows counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.*, 466 U.S. at 693, 104 S. Ct. at 2067.

Thus, the prejudice prong of *Strickland* requires a petitioner, even one who can show that counsel's errors were unreasonable, to go further and show the errors "actually had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id. See Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997)). Rather, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

A petitioner must satisfy both prongs of *Strickland* in order to prevail on an ineffective assistance of counsel claim. *See id.*, 466 U.S. at 687, 104 S. Ct. at 2064. It is not necessary to address the performance and prejudice prongs in any particular order, nor must both prongs be addressed if the district court determines the petitioner has failed to meet one prong. *Id.*, 466 U.S. at 697, 104 S. Ct. at 2069. Indeed, the *Strickland* Court noted that "if it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, that course should be followed." *Tokar v. Bowersox*, 198 F.3d 1039, 1046 (8th Cir. 1999) (citing *Strickland*).

In short, a conviction or sentence will not be set aside "solely because the outcome would have been different but for counsel's error, rather, the focus is on whether 'counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" *Mansfield v. Dormire*, 202 F.3d 1018, 1022 (8th Cir. 2000) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993)).

In denying Lang's claim, the Iowa Court of Appeals noted Lang could not prevail on his claim of ineffective assistance of counsel without first proving the State breached the plea agreement. Doc. No. 28-4 at 37 (citing *State v. Carrillo*, 497 N.W.2d 497, 500 (Iowa 1999)). Because the Iowa court correctly held Lang had breached the plea agreement, the prosecutor no longer was bound by the agreement that Lang's sentence would not be trebled. As a result, even if Lang's attorney had objected to the State's sentencing recommending, the objection would have been overruled, and the outcome of the proceeding would have been unchanged. Because he cannot show prejudice, Lang's claim for relief based on ineffective assistance of counsel must fail. The Iowa court's denial of Lang's ineffective assistance of counsel claim was consistent with *Strickland* and its progeny, and Lang has failed to show otherwise.

## *CONCLUSION*

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[2] in accordance with 28 U.S.C. § 636 (b)(1)(c) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that Lang's petition for writ of *habeas corpus* be denied, and judgment be entered in favor of Ault and against Lang.

**IT IS SO ORDERED.**

**DATED** this 26th day of January, 2006.

*[signature]*

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[2]Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).